**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**UNITED STATES OF AMERICA**

vs.                                                                 Case No: 3:99cr18/RV

**MICHAEL CRAIG PUGH**
**a/k/a Crucito Solano Serrano**
_____

**REPORT AND RECOMMENDATION**

This matter is before the court upon defendant's motion under 18 U.S.C. § 3600 for DNA testing by a person in federal custody with incorporated memoranda (sic) of law in support, (doc. 152), the government's response and supplemental response (doc. 156 & 157), the defendant's reply and supplemental reply (doc. 161 & 162).

**I. BACKGROUND**

Petitioner and co-defendant Kenneth Bernard Nickson were named in a five count indictment charging them with attempted bank robbery and four firearms charges.[1] Petitioner was represented by appointed counsel M. James Jenkins. Initially, both defendants pleaded not guilty, and the case was set for the trial term

---

[1] On December 24, 1998, two men wearing dark clothing, masks and carrying firearms attempted to accost a teller who arrived for work at a NationsBank in Pensacola. The teller spotted the men before entering the bank and ran from the bank parking lot. A third individual was parked across the street in a car. The robbers who were on foot ran through the neighborhood, abandoning weapons, masks and some of their clothing before entering a nearby laundromat where they placed additional clothing and other items in washing machines. A citizen who observed the robbers' flight through the neighborhood called 911. The co-defendants were arrested in the laundromat. A police K-9 later followed a single scent from the witness's house to the laundromat.

beginning May 3, 1999.  On April 26, 1999, the government filed an expedited motion requesting a court order requiring the defendants to provide blood samples so that the DNA structure of the defendants' blood could be compared to the DNA structure found in hair samples found in the clothing and masks that had been recovered. This motion was granted.

Defendant Nickson pleaded guilty on May 10, 1999.  Before jury selection on May 17, 1999 the government requested a ten day continuance of the trial so its DNA experts could complete analysis on the mask allegedly worn by defendant Pugh.[2] This motion was denied and a jury was selected.  After jury selection, the district court held a hearing on the government's application for a compulsion order requiring Nickson to testify in defendant's trial.  At the hearing, Nickson testified that he had attempted to rob the bank with an individual named Ray and that defendant Pugh had not participated in the attempted robbery.  The court, expressing a desire to get to the truth, reversed its previous ruling and granted the government's request for a continuance until May 24, 1999.

DNA testing was completed late on May 20, 1999.  Florida Department of Law Enforcement forensic serologist Jack Remus, who was the government's expert at trial, orally advised the government that the DNA on the other mask matched defendant's DNA.  The government reported these findings to defense counsel on the same date and provided the written report when it was received on Friday. Remus was made available to defense counsel who interviewed him about the report and DNA testing methods.

On Monday, May 24, 1999, counsel filed a motion in limine to exclude the government's DNA evidence or in the alternative, a request for a continuance for him to obtain an appointed expert to assist in the cross-examination of the government's witness.  The court held a *Daubert* hearing (doc. 50) after which it determined that the DNA evidence was reliable enough to be admitted in the case, and appointed an

---

[2]DNA obtained from the other mask had been identified as a "match" to Nickson's DNA

*Case No: 3:99cr18/RV*

expert to assist defense counsel.  After hearing the testimony of the majority of the government's witnesses the court continued the trial until Thursday, May 27.

On May 27, defense counsel asked for another continuance, claiming that he had not had sufficient time to prepare for cross-examination of the government's DNA witness and again objecting to the witness's qualifications.  The court pointed out that the possibility that DNA evidence would be used had been on the table since before jury selection on May 17.  Counsel was made aware of the "positive" DNA results as to co-defendant Nickson before that time, had been advised of the results of the test involving his client's DNA a week earlier, and had an opportunity to cross-examine the government's expert at the *Daubert* hearing and to consult his own expert.  The court also stated that in its experience, no attorney feels he has sufficient time to prepare.  It denied the motion for a continuance on this basis and ruled that the government's DNA evidence was admissible.

Mr. Remus testified at trial and was extensively cross-examined by counsel about his training and experience, the procedures he used, the possibility of contamination, the accuracy of the test and the basis for his conclusion that the petitioner could have worn the mask. The defense motion for a judgment of acquittal after the government rested was denied.

Defendant did not testify in his own behalf.  The defense called co-defendant Nickson who took the stand and again testified that Pugh had not been involved in the attempted bank robbery.  Nonetheless, defendant Pugh was convicted as charged of attempted bank robbery, possession of a firearm during a crime of violence, felon in possession of a firearm and possession of an unregistered firearm. He was sentenced to a term of 312 months imprisonment on Counts I, III, IV and IV, and a consecutive term of 120 months imprisonment on Count II.  Defendant appealed, contending he was denied his right to effective assistance of counsel when the court denied his motions for continuances, since defense counsel purportedly was unable to effectively represent him regarding the DNA evidence.  On

February 29, 2000, the appellate court affirmed the conviction, finding that the trial court's denial of the requested continuance did not result in "specific substantial prejudice" and that "defense counsel's extensive and robust cross-examination of [the DNA expert] at trial regarding his background and knowledge of DNA, and regarding the specific tests he performed in the instant case, shows that he was sufficiently prepared to effectively represent his client." (doc. 103). Defendant filed a petition for a writ of certiorari in the United States Supreme Court which was denied. *Pugh v. United States*, 531 U.S. 894, 121 S.Ct. 224, 148 L.Ed.2d 159 (2000).

Defendant filed a § 2255 motion in August of 2000 in which he contended that the district court lacked jurisdiction over this offense, that the armed career criminal enhancement was improperly applied, that he was actually innocent of the four firearms charges, that sentencing enhancements were improperly applied, and that counsel was ineffective for failing to call a DNA expert witness. The motion was denied on April 13, 2001. (Doc. 121). Defendant appealed the denial of the § 2255 motion, and his appeal was dismissed for lack of a certificate of appealability. (Doc. 139).

Defendant also filed a motion under 28 U.S.C. § 2241 to modify or correct illegal sentence (doc. 150) which was denied on December 15, 2005. (Doc. 151). The instant motion was filed in March of 2009.

II. LEGAL ANALYSIS

DNA testing is governed by title 18 U.S.C. § 3600. This section provides that upon a written motion by an individual serving a federal sentence ("the applicant"), the district court shall order DNA testing of specific evidence if ten criteria are met.

First, the applicant must assert, under penalty of perjury, that he is actually innocent of the offense for which he is under sentence. 18 U.S.C. § 3600(a)(1). Contrary to the government's position, on page 15 of his memorandum, defendant makes this very assertion. (Doc. 152 at 15). The government nonetheless maintains

that defendant has not "properly declared himself to be actually innocent." It contends that the defendant's June 4, 2002 letter to the prosecuting assistant United States Attorney demonstrates that any assertion that he is actually innocent is untrue. The text of the letter, addressed to AUSA Benjamin Beard, is as follows:

> I'm writing this letter in regards to a robbery in the Pensacola area. I have all the information that will lead to the arrest of everybody involved. One of the guys was involved with the Bank Robbery that I'm incarcerated for right now.
> I'm willing to testify at the Grand Jury to get an indictment for the robbery. I was hoping that you were interested in prosecuting this case since you were the prosecutor on my case. I spoke with an Agent with the F.B.I. about the case very briefly, but I don't have a lawyer right now, so I didn't go into full detail about the robbery.
> You can call me back on federal writ as soon as you receive this letter, but I may need immunity from prosecution. I'm willing to give my full cooperation for a Rule 35.
> If you can write me back, and let me know what I need to do to start this process, I would really appreciate it. Also let me know about the immunity situation as well. I'm ready to go forward with this, but I need to know what to do. I think you will be interested, because these are serious charges.

(Doc. 157, exh. A). To the undersigned, it appeared that defendant's reference to "a robbery in the Pensacola area" could have been a robbery other than the one for which defendant was incarcerated. However, defendant asserts in his supplemental reply that in this letter he is speaking of the robbery in this case. He maintains that no where in the letter does he concede that he participated in the bank robbery, but rather he is telling AUSA Beard that he has information that can lead the government to the arrest of the other two men that participated with Nickson in the bank robbery for which defendant is currently under sentence. If indeed this is the case, defendant's reference to needing "immunity" seems contradictory in light of his current assertion that he is "actually innocent." However, the court's interpretation of this issue is not dispositive of defendant's motion.

*Case No: 3:99cr18/RV*

<mark>*Page 6 of 9*</mark>

The next statutory requirement is that the specific evidence to be tested must have been secured in relation to the investigation or prosecution of the offense of conviction. 18 U.S.C. § 3600(a)(2). The government does not contest that defendant has satisfied this prong of the test.

Third, under 18 U.S.C. § 3600(a)(3)(B), the defendant must be requesting DNA testing using a new method or technology that is substantially more probative than the prior DNA testing. Defendant asserts that there are several more probative methods or technology of DNA testing that can be used. He specifically identifies the Short Tandem Repeat ("STR") test; DNA Genotek; and the SNP Genotyping of saliva DNA using Affymetrix & Genechip. The government does not refute defendant's assertion about the increased validity of the listed tests. However, the court notes that STR is not per se a "new" method or technology, as defendant himself noted in his memorandum that Remus testified he was not qualified to perform STR or RFLP (Restricted Fragment Length Polymorphism) testing, so such testing was clearly technologically available at the time of his trial.

The next requirement is that the evidence to be tested must be in the possession of the government and have been subject to a chain of custody and retained under conditions sufficient to ensure that it has not been tampered with, contaminated or altered. 18 U.S.C. § 3600(a)(4). Defendant notes the requirements of 18 U.S.C. § 3600A, regarding preservation of biological evidence. Section 3600A(a) provides that the government shall preserve biological evidence that was secured in the investigation or prosecution of a federal offense, if a defendant is under a sentence of imprisonment for such offense, which defendant in this case clearly is. Defendant notes that the biological evidence in his case, blood, saliva, hair, skin tissue, sweat and fibers meets the statutory definition. 18 U.S.C. § 3600A(b). This section does not apply under certain circumstances. Title 18 U.S.C. § 3600A(c) provides that Subsection (a) does not apply if:

> **(1) a court has denied a request or motion for DNA testing of the biological evidence by the defendant under section 3600, and no appeal is pending;**
>
> **(2) the defendant knowingly and voluntarily waived the right to request DNA testing of the biological evidence in a court proceeding conducted after the date of enactment of the Innocence Protection Act of 2004;**
>
> **(3) after a conviction becomes final and the defendant has exhausted all opportunities for direct review of the conviction, the defendant is notified that the biological evidence may be destroyed and the defendant does not file a motion under section 3600 within 180 days of receipt of the notice;**
>
> **(4)(A) the evidence must be returned to its rightful owner, or is of such a size, bulk, or physical character as to render retention impracticable; and**
> **(B) the Government takes reasonable measures to remove and preserve portions of the material evidence sufficient to permit future DNA testing; or**
>
> **(5) the biological evidence has already been subjected to DNA testing under section 3600 and the results included the defendant as the source of such evidence.**

**There has been no denial of a request for DNA testing, and defendant has not waived the right to request DNA testing. Although defendant's conviction is final and all opportunities for direct review have been exhausted, defendant states he has not received any notice from the government that the evidence was to be destroyed. The evidence has not been previously subjected to DNA testing under section 3600. Thus, defendant argues, the evidence should have been preserved. The government states, without further explanation or proof, that:**

> [t]he government would proffer that, as the government believes the defendant knows, the physical evidence recovered and placed into evidence was destroyed during the ordinary course of business in accordance with standard law enforcement protocols after all direct appeals were resolved. Thus, there is no physical evidence upon which to conduct testing.

*Case No: 3:99cr18/RV*

(Doc. 157 at 1). Defendant asserts that the government failed to follow the protocol set forth in 18 U.S.C. § 3600A(c)(3) and (4)(B), in that he was not notified prior to the destruction of evidence. Defendant fails to recognize, however, that these statutory requirements were not enacted until October 30, 2004, nearly four years after defendant exhausted all avenues of direct review of his conviction, and presumably after the evidence in his case was destroyed. The government cannot be faulted for its failure to comply with procedures that were not yet in place. And, accepting its proffer as true, defendant has not met the fourth prong of the statute.

Fifth, the defendant must establish that the proposed DNA testing is reasonable in scope, uses scientifically sound methods and is consistent with accepted forensic practice. 18 U.S.C. § 3600(a)(5). The government does not dispute that the methods suggested by the defendant are scientifically sound.

Sections § 3600(a)(6)-(8) are somewhat interrelated, at least with respect to defendant's case. The defendant must identify a theory of defense that is not inconsistent with an affirmative defense presented at trial and would establish his actual innocence, 18 U.S.C. § 3600(a)(6); the identity of the perpetrator must have been an issue at trial, 18 U.S.C. § 3600(a)(7); and the proposed DNA testing would support the theory of defense and raise a reasonable probability that the defendant did not commit the offense. 18 U.S.C. § 3600(a)(8). At trial, defendant attempted, albeit unsuccessfully, to establish that he was not one of the robbers, including through the testimony of co-defendant Nickson. Thus, he arguably has met these prongs of the statutory requirements.[3]

Defendant agrees to provide a DNA sample in accordance with 18 U.S.C. § 3600(a)(9).

Finally, the Act requires that the motion be made in a timely fashion. The government contends that the motion is untimely. However, title 18 U.S.C. §

---

[3] The court is not entirely prepared to say on the record before it, however, that an inconclusive or exculpatory DNA test would exonerate the defendant in light of other circumstantial evidence presented at trial.

*Case No: 3:99cr18/RV*

3600(a)(10)(A) provides that there is a rebuttable presumption of timeliness of a motion for DNA testing "if the motion is made within 60 months of enactment of the Justice For All Act of 2004 or within 36 months of conviction, whichever comes later." The Act was enacted on October 30, 2004, and therefore, defendant's motion, filed on March 12, 2009 pursuant to the prison mailbox rule, was well within the time constraints of the Act.

Because defendant has failed to satisfy all ten parts of the standard established in 18 U.S.C. § 3600(a), his motion should be denied.[4]

Based on the foregoing, it is respectfully RECOMMENDED:

Defendant's motion for DNA testing (doc. 152) be DENIED.

At Pensacola, Florida, this 21st day of May, 2009.


/s/ *Miles Davis*
    MILES DAVIS
    UNITED STATES MAGISTRATE JUDGE


### NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy thereof. **Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.** A copy of objections shall be served upon all other parties. Failure to object may limit the scope of appellate review of factual findings. See 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).

---

[4] The lone reported case discussing this statute appears to be *Gorko v. United States*, ___ F.Supp.2d ___, 2008 WL 4682801 (M.D. Pa. 2008). In *Gorko*, the defendant's motion was denied due to his failure to meet the eighth prong of the statutory test. The availability of the evidence to be tested was not contested in that case.